AMADO, The, (ROGERS v.)
[See Rogers v. The Amado, Case No. 12,005.]

---

AMADOR, (UNITED STATES v.)
[See United States v. Amador, Case No. 14,437.]

---

AMANDA F. MYRICK, The, (HERBERT v.)
[See Herbert v. The Amanda F. Myrick, Case No. 6,395.]

---

AMANDA FRANCES MYRACK, The, (COHEN v.)
[See Cohen v. The Amanda Frances Myrick, Case No. 2,962.]

---

*[Nowhere reported.]

---

AMARANTH, The (REGAN v.)
[See Regan v. The Amaranth, Case No. 11,664.]

---

AMAZON, The, (PEACON v.)
[See Peacon v. The Amazon, Case No. 10,871.]

---

## Case No. 270.

### AMAZON INS. CO. v. The IRON MOUNTAIN.

[1 Flip. 616;[1] 6 Ins. Law J. 155; 23 Int. Rev. Rec. 49; 4 N. Y. Wkly. Dig. 95; 4 Cent. Law J. 103; 9 Chi. Leg. News, 157.]

Circuit Court, S. D. Ohio. Dec. 23, 1876.

ADMIRALTY — PLEADING — INSURER AGAINST CARRIER—LIBEL PROPERLY FILED IN NAME OF CARRIER.

1. Libel by insurer who has paid the loss, against carrier whose wrongful act has caused the loss. Respondent is not permitted to set up as a defense that he (the insurer) was not bound in law to indemnify the assured for the loss so occasioned.

[Cited in Standard Sugar Refinery v. The Centennial, 2 Fed. 412.]

2. It is proper to bring such libel in the name of the insurer, and not in the name of the assured, for the use of the insurer. This is the admiralty practice.

[See The Planter, Case No. 11,207a; Mutual Ins. Co. v. Cargo of The George, Id. 9,981.]

[In admiralty. Libel by the Amazon Insurance Company against the steamboat Iron Mountain and the barge Ironsides. Heard on exceptions to the libel. Exceptions overruled.]

The facts are fully stated in the opinion of the court.

Moulton, Johnson & Levy, for libelant.

Hoadly, Johnson & Colston, for respondents.

SWING, District Judge. The libel filed in this case seeks to recover for the value of one hundred and twenty-five barrels of flour alleged to have been lost through the negligence or wrongful act of respondents, as owners of the steamboat Iron Mountain and barge Ironsides No. 3, on which flour libellant had insured the owner, to whom it paid the insurance; he having abandoned to it the property upon the happening of the accident entailing the loss. The bill of lading contracted to carry the flour from the port of Mt. Vernon, Ind., at which port it was shipped, to the port of New Orleans, La., and the insurance by libellant was upon the flour in transit between these points, to be transported by the boat and barge named, against the usual risks of river navigation, excepting, however, such losses for which the carrier would be liable to the owner of the insured property. The respondents—owners of the boat and barge—file exceptions to the libel, claiming, first, that the action

---

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission.]

should have been brought in the name of the owner of the flour; and, second, that the libel cannot be maintained by the insurance company in its own name.

The exceptions cannot be sustained. In The Monticello v. Mollison, 17 How. [58 U. S.] 152, the supreme court say: "It is true that in courts of common law the injured party alone can sue for a trespass, as the damages are not legally assignable, and if there be an equitable claimant, he can sue only in the name of the injured party, whereas in admiralty, the person equitably entitled may sue in his own name." In the case of The Manistee, [Case No. 9,027,] the libel was filed by the insurance company in its own name in an action similar to the present, and it seems to have been conceded that it was properly brought. To the same effect, see Insurance Co. v. The C. D. Jr.. [Id. 7,051.]

The second exception to the libel is, that, inasmuch as the loss happened during an unlawful deviation on the part of the carrier, or was caused by improper conduct of the master, the insurance company was not legally liable to the insured for the loss, and the payment by it of the insurance was but voluntary; hence, subrogation to his rights to recover from the carrier did not arise, and consequently libellant has no remedy over against the owners of the boat and barge for the loss. The same objection was made, and the question expressly raised, in the case of The C. D. Jr., above cited, where Judge Woods summarily disposed of it in the following brief sentences: "Respondents further claim, that, having shown by the testimony, as they allege, that the insurance company was not legally bound to indemnify the insured for the loss the latter sustained by the collision, therefore the libellants have no cause of action against the respondents, although they have paid the loss. But I am of opinion that the authorities are adverse to this claim, and adopt the conclusion of the district judge, and refer to the case of The Monticello v. Mollison, 17 How. [58 U. S.] 152."

Respondents' solicitors, however, suggest that perhaps the point was not fully considered by Judge Woods; but it appears to me that the contrary inference can only be drawn from the report, as the learned judge states his opinion as the "result of the authorities," which must have been cited pro and con. by the counsel for the respective parties. Besides, it is evident that the question had been fully argued before the district judge, who had decided it in the same way, and the counsel for the respondents, in the case before me, have failed to cite any authority to sustain the opposite view, and I have not been able to find any which gives it support. In The Monticello v. Mollison, ubi supra, it was held that, while in courts of admiralty, in contradistinction to those at common law, "the person equitably entitled may sue in his own name, yet that the

same reasons why the wrong doer cannot be allowed to set up as a defense the equities between the insurer and the insured, equally apply to both courts." "The respondent," the court proceed to say, "is not presumed to know or bound to inquire as to the relative equities of parties claiming the damages. He is bound to make satisfaction for the injury he has done. When he has once made it to the injured party, he cannot be made liable to another suit at the instance of any merely equitable claimant. If notified of such a claim before payment. he may compel the claimants to interplead; otherwise, in making reparation for a wrong done, he need look no further than to the party injured." Again, the same court, in Hall v. Railroad Co., 13 Wall. [80 U. S.] 367, pertinently say: "It is too well settled by the authorities to admit of question, that, as between a common carrier of goods and an underwriter upon them, the liability to the owner for their loss or destruction is primarily upon the carrier, while the liability of the insurer is only secondary. The contract of the carrier may not be first in order of time, but it is first and principal in ultimate liability. In respect to the ownership of the goods, and the risk incident thereto, the owner and the insurer are considered as one person, having together the beneficial right to the indemnity due from the carrier for a breach of his contract, or for non-performance of his legal duty. Standing thus, as the insurer does, practically in the position of a surety, stipulating that the goods shall not be lost or injured in consequence of the peril insured against, whenever he has indemnified the owner for the loss, he is entitled to all the means of indemnity which the satisfied owner held against the party primarily liable. His right rests upon familiar principles of equity. It is the doctrine of subrogation, dependent not at all upon privity of contract, but worked out through the right of the creditor or owner." In the case of The Manistee, [Case No. 9,027,] it was contended on behalf of the carrier, "that the insurance policy was void, because it was issued in disregard of the requirements of the laws of the state." But the learned judge held that, "in his opinion, the carrier should not be permitted to make that defense," adding, "that the shipper might have brought a libel for the use of the company (the underwriter), and if the use were not expressed in the record, the court would protect the company even after a decree in favor of the libellant." The result from these principles and authorities seems plainly to be that the carrier in this class of cases cannot set up any different defense against the underwriter than he could have against the owner of the goods lost, were the action brought by the latter. Substantially the action is to be considered and treated as though prosecuted by and in the name of the insured owner or shipper for the use of the

underwriter, to be defended on the same grounds, and determined by the observance of the same rules, and the application of the same legal principles. It would be an anomaly indeed, if, in a case where it was admitted, the owner could recover against the carrier for the use of the underwriter, the latter having paid the loss, and suing directly in his own name in admiralty, as he may, thus standing, as we have seen, substantially in the place of the owner, could not recover. Such a result would be extremely inconsistent and illogical. The carrier has all the privileges and immunities to which he is justly entitled when he is allowed to interpose the same defenses against the underwriter which he could against the owner, no more nor less, however. No privity of contract existing, as has been shown, he cannot be permitted to inquire into the equities which may have existed between the underwriter and the owner, and thus divert the issue to be tried from the question of his unlawful acts or negligence to that of the liability or non-liability of the underwriter to the owner. What he must negative, is his liability to the owner, not that of the insurer to the owner. The exceptions will be overruled.